IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSE VALDES ALVAREZ, | ) | Case No. 8:25-CV-672 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GREG LONDON, Sarpy County Sheriff; | ) | **PETITION FOR WRIT** |
| PETER BERG, Director, United States | ) | **OF HABEAS CORPUS** |
| Immigration and Customs Enforcement | ) | |
| St. Paul Field Office; TODD M. LYONS, | ) | |
| Acting Director, United States | ) | |
| Immigration and Customs Enforcement; | ) | |
| KRISTI NOEM, Secretary, United | ) | |
| States Department of Homeland | ) | |
| Security; SIRCE OWEN, Executive | ) | |
| Office of Immigration Review; PAMELA | ) | |
| BONDI, Attorney General of the United | ) | |
| States; DONALD J. TRUMP, President | ) | |
| of the United States, in their official | ) | |
| capacities, | ) | |
| | ) | |
| Respondents. | ) | |

## INTRODUCTION

1.      Jose Valdes Alvarez was arrested by Immigration and Customs Enforcement (ICE) following a traffic stop by ICE claiming they were looking for a different Jose Valdes.  Mr. Valdes has no prior criminal history or ICE encounters. He is being held in the Sarpy County Jail and has a hearing in front of an Immigration Judge (IJ) on December 2, 2025.

2.      Valdes has requested a bond redetermination hearing in front of the IJ, however it is expected the IJ will follow the Board of Immigration Appeals (BIA) decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  The *Yajure* decision found that IJ's do not have jurisdiction to hold a bond hearing for any

noncitizen who entered the country without inspection or admission.  The IJ's in the Omaha Immigration Court continue to follow this decision in new detained cases even after several reversals by United States District Courts.

3.      Valdes now languishes in custody for the duration of the bond appeal, or even longer, despite qualifying for a bond redetermination hearing in immigration court. As applied to this case, the *Yajure* decision finding no jurisdiction for a bond redetermination hearing, which Valdes fully expects the IJ to follow, is an unconstitutional denial of Mr. Valdes' liberty.

4.      Valdes seeks habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging his unlawful detention. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301, 121 S. Ct. 2271, 2280 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

5.      He respectfully requests that the Court find his detention unlawful and unconstitutional and issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to immediately release him from custody. Alternatively, the Petitioner requests that this Court order Respondents to provide him with a bond redetermination hearing.  In the alternative, he respectfully requests the Court order Respondents to show cause why this Petition should not be granted within three days.

## CUSTODY

6.     Valdes is in the physical custody of Respondents. He is under the direct control of Respondents and their agents. He is currently detained in the Sarpy County Detention Center in Papillion, NE.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331.

8.     Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 2242 because Valdes is confined in this District, at least one Respondent is in this District, Valdes' immediate physical custodian is in this District, and a substantial part of the events giving rise to the claims in this action occurred in this District. *See Trump v. J. G. G.*, 145 S. Ct. 1003, 1005–06 (2025) (per curiam) ("For core habeas petitions, jurisdiction lies in only one district: the district of confinement" (internal quotation marks and citation omitted)).

## HABEAS CORPUS

9.     A petitioner is entitled to habeas relief if he demonstrates that his detention violates the United States Constitution or federal law. 28 U.S.C. § 2241.

10.     The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 20 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

11.    The Court has inherent power to release the petitioner pending review of his petition. *See Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986).

## PARTIES

12.    Valdes is currently in the custody of the Sarpy County Jail in Papillion, NE.  Respondent Greg London is the Sarpy County Sheriff and has physical and administrative custody over Valdes. He is named in his official capacity. Although Valdes is in physical custody in Sarpy County he is detained by ICE and has been in ICE custody since November 15, 2025.

13.    Respondent Peter Berg is the Director of the ICE St. Paul Field Office. He is a legal custodian of Valdes and is named in his official capacity.

14.    Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Valdes and is named in his official capacity.

15.    Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Valdes and is named in her official capacity.

16.    Respondent Sirce Owen is the Acting Director of the Executive Office of Immigration Review.  She is a legal custodian of Valdes and is named in his official capacity.

17.    Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Valdes and is named in her official capacity.

18.    Respondent Donald J. Trump is the President of the United States. He is a legal custodian of Valdes and is named in his official capacity.

## FACTUAL ALLEGATIONS

### A. Background

19.    Valdes is a longtime Nebraska resident. He was born in Mexico but left the country in 1997.  For 28 years, Valdes has worked hard, paid taxes, and contributed to the Nebraska community.

20.    Mr. Valdes has significant ties to the community, including five children, one of whom has Deferred Action for Childhood Arrivals, and four who are U.S. Citizens.  One of his children has filed a petition for Mr. Valdes to one day become a Lawful Permanent Resident. He also has an elderly mother who is a Lawful Permanent Resident.  Mr. Valdes also is not a flight risk or danger to the community. He is currently taking medication for diabetes and has never been in trouble with the law.

21.    Mr. Valdes was arrested by ICE on November 15, 2025 when they claimed to be looking for another Jose Valdes.  He has been in the Sarpy County Jail since November 15, 2025. He has no criminal history.

22.    On December 2, 2025 Mr. Valdes has a hearing in front of an IJ.  He fully intends to request a bond from the IJ at this hearing, however he believes that this request will be denied based on the *Yajure* decision, as the Omaha IJ's have done since the decision's release.

### B. Detention and Bond Hearing

23.     Congress has granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision. *See* 8 U.S.C. § 1226(a). The Attorney General has delegated that authority to IJs. 8 C.F.R. §§ 1003.19, 1236.1. The discretionary detention provision, 8 U.S.C. § 1226(a), applies only to noncitizens without serious criminal convictions. It contrasts with the mandatory detention provision, 8 U.S.C. § 1226(c), which applies to noncitizens convicted of certain criminal offenses or involved in terrorist activities and requires continued detention.

24.     Because Valdes was found within the United States, he was arrested and detained under Section 1226(a).

25.     When a noncitizen is detained under Section 1226(a), DHS makes the initial custody determination, but the detainee can request reconsideration by an IJ. Here, DHS initially detained Valdes without bond. Valdes has since requested a bond redetermination hearing in front of an IJ.

26.     Valdes has evidence which supports the claims in this petition regarding his strong ties to the community.  There is also no evidence that DHS can present which shows he is a flight risk or danger to the community.

27.     Valdes remains in DHS custody without the opportunity for release.

### LEGAL FRAMEWORK

28.     The Due Process Clause of the Fifth Amendment guarantees that no person in the United States shall be deprived of liberty without due process. U.S.

Const. amend. V. These substantive and procedural due process protections apply to all people, including noncitizens. *Trump v. J.G.G.*, 604 U. S. ---145 S. Ct. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439 (1993)). The Omaha IJ's continued refusal to hold bond redetermination hearings for noncitizens similarly situated to Valdez violates substantive and procedural rights to due process.

### A. Substantive Due Process

29.     The Due Process Clause provides heightened protection against government interference with certain fundamental rights—and freedom from detention lies at the heart of the Due Process Clause's protections. Detention by the government violates due process in civil proceedings *unless* "a special justification . . . outweigh[s] the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, (2001).

30.     In Valdes' case, DHS will be unable to present any evidence that he is a danger to the community or he is a flight risk, and any argument to such will be heavily mitigated by Valdes' proposed evidence.

31.     The government has no special or compelling justification to continue detaining Valdes, and certainly not an interest that outweighs Valdes' interest in avoiding government restraint. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The regulation, which permits unilateral government detention of

individuals without a case-by-case determination after a reasoned finding that they do not pose threat to safety or a risk of flight, violates the Due Process Clause because no special justification exists that outweighs the individual's constitutionally protected interest in avoiding physical restraint."); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 669 (D.N.J. 2003) ("[T]he Government has not shown that any 'special justification' exists which outweighs Petitioner's constitutional liberties so as to justify his continued detention without bail.").

32.    The government's decision to not hold a bond redetermination hearing for noncitizens similarly situated to Valdes and continued detention of Valdes violates his substantive due process rights.

## B. Procedural Due Process

33.    Due process also requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976). Valdes will not receive a meaningful opportunity for a bond hearing if the IJ continues to follow the *Yajure* decision and finds no jurisdiction to hold a bond hearing.

34.    To determine whether government conduct violates procedural due process, the Court weighs three factors: (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures. *Id*. at 335.

### *Private Interest*

35.     Valdes' private interest is the right to be free from government detention. This interest is of the highest constitutional import.

36.     Valdes' conditions of detention further tip this factor in his favor. *See Günaydın v. Trump*, __ F. Supp. 3d __, File No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *7 (D. Minn. May 21, 2025). He is in custody away from his family, including his partner, child, and elderly mother.

37.     Despite being in custody for a civil offense, he is detained with and subject to the same rules as those incarcerated for criminal offenses.

38.     Valdes cannot move freely, eat the food that he wants, sleep in his own bed, or spend time with his loved ones. He has very little privacy. His next immigration hearing date is December 2, 2025, with a final hearing most likely months away.

39.     The private interest here is fundamental: freedom from detention. It weighs heavily in the weighing of the *Mathews* factors.

### *Risk of Erroneous Deprivation*

40.     Similarly, the risk of erroneous deprivation of Valdes' liberty is substantial. Any decision by this IJ to not hold a bond hearing is not based upon any circuit case holding, statute, or regulation, but rather the agency's newfound interpretation of the INA.

41.    The Government's ability to detain noncitizen during removal proceedings is found in the Immigration and Nationality Act, Title 8 U.S.C. §1221 et seq.:

a. Discretionary Detention, 8 U.S.C. § 1226(a) generally allows for the detention of noncitizens who are in regular, non-expedited removal proceedings, and permits those noncitizens who are not subject to mandatory detention to be released on bond or on their own recognizance;

b. Mandatory Detention of "Criminal" Noncitizens. 8 U.S.C. § 1226(c) generally requires the mandatory detention of noncitizens who are removable because of certain criminal or terrorist-related activity after they have been released from criminal incarceration.

c. Mandatory Detention of "Applicants for Admission." 8 U.S.C. § 1225(b) generally requires detention for certain noncitizen applicants for admission, such as those noncitizens arriving in the U.S. at a port of entry or other noncitizens who have not been admitted or paroled into the U.S. and are apprehended soon after crossing the border.

d. Detention Following Completion of Removal Proceedings. 8 U.S.C. § 1231(a) generally requires the detention of certain noncitizens who are subject to a final removal order during the 90-day period after the completion of removal proceedings and permits the detention of certain noncitizens beyond that period. Id. at § 1231(a)(2),(6).

42. Mr. Valdes' case concerns the detention provisions at §§ 1226(a) and 1225(b). Both detention provisions, §§ 1226(a) and 1225(b), were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025)

43. Following enactment of the IIRIRA, the Executive Office for Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225(b) and that they were instead detained under § 1226(a) after an arrest warrant was issued by the Attorney General. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

44. For nearly thirty years, ICE and EOIR practice was that most noncitizens apprehended in the interior of the United States after they had been living in the U.S. for more than two years (as opposed to "arriving" at a point of entry, border crossing, or being apprehended near the border and soon after entering without inspection) received a bond hearing. If determined to not be a danger to the community or a flight risk and, as a result, granted a change in custody status, the

individuals were released from detention either on their own recognizance or after paying the bond amount set by the IJ in full. 8 U.S.C. § 1226(a)(2)(A).

45.    Recently, ICE has—without warning nor any publicly-stated rationale—reversed course and adopted a policy of attempting to treat all individual noncitizens that were not previously admitted to the U.S. that are contacted in the interior of the U.S. at any time after their entry as "arriving" and ineligible for bond regardless of the particularities of their case.  Following ICE's policy change, the BIA issued its *Yajure* decision on September 5, 2025.

46.    DHS and DOJ's refusal to hold a bond hearing has no basis in law, and the sole rationale on the IJ's order is "No jurisdiction – 235(b)(2)(A)".  The only jurisdiction provided in Court was the IJ believed that §1225 was what should have always applied, and the *Jennings* case underlies this fact.  *Jennings v. Rodriguez*, 138 U.S. S.Ct. 830 (2018).

47.    The plain meaning of terms used in §§1225 and 1226 contradict DHS and DOJ's interpretation of the statute.  8 U.S.C. §1225(b)(2)(A) applies to noncitizens who are applicants for admission, defined as a an alien "seeking admission."  Seeking admission "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929).

48.    The two statutes of §1225 and §1226 are distinguished in that §1225 principally governs the detention of noncitizens seeking admission into the country, whereas §1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings…" *Jennings* at 838.

49.     DHS and DOJ's reading would also make large portions of §1226 superfluous.  Congress recently amended §1226 with the Laken Riley Act (LRA). That act requires detention of noncitizens charged with certain crimes *and* who entered the United States without inspection.  If DHS and DOJ are correct, then there would have been no point in Congress passing the LRA.

50.     Most District Courts analyzing this issue have found the Government's interpretation of §1225 to be incorrect.  *See Aguilar Maldonado v. Olson*, No. 25-CV-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero*, 2025 WL 2403827, at *9; *see also, e.g.*, *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Vazsquez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *Rosado v. Figueroa*, No. CV-25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, 25 Civ. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025). *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025).

### *Government Interest*

51.     The government's interest here carries little weight in comparison. There is no discernable harm with either releasing Petitioner Valdes nor at the very least ordering the IJ to hold a bond redetermination hearing.

### FIRST CAUSE OF ACTION

### Violation of Fifth Amendment – Substantive Due Process

52.     Valdes realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

53.    The U.S. Constitution establishes the right to due process for all persons within the United States, including noncitizens, whether their presence here is lawful or unlawful.

54.    Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Valdes has been deprived of his liberty.

55.    The government's continued detention of Valdes is not supported by any special interest or compelling justification that outweighs his liberty interest. The IJ's refusal to hold a bond redetermination hearing violates his substantive due process rights.

## SECOND CAUSE OF ACTION

### Violation of Fifth Amendment – Procedural Due Process

56.    Valdes realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

57.    Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Valdes has not received that opportunity here.

58.    Valdes' liberty interest and the risk of erroneous deprivation far outweigh the government's interest in continued detention. The IJ's refusal to hold a bond redetermination hearing violates Valdes' procedural due process rights.

## THIRD CAUSE OF ACTION

### Violation of the Administrative Procedures Act

59.    The IJ's decision violates the Administrative Procedures Act, specifically that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law; was contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; and without observance of procedure required by law.  5 U.S.C. §706(2)(A)-(D).

60.    Valdes incorporates his previous arguments and paragraphs.


**PRAYER FOR RELIEF**

Petitioner Jose Valdes Alvarez respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order the immediate release of Petitioner pending these proceedings, pursuant the Court's inherent power;

(3) If Petitioner is not immediately released, order Respondents not to transfer Petitioner out of this District during the pendency of these proceedings, to preserve jurisdiction;

(4) Declare that Petitioner's detention violates the Fifth Amendment;

(5) Declare that Petitioner's detention violates the Administrative Procedures Act;

(6) Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody, or, in the alternative, order Respondents to show cause why this Petition should not

be granted within three days, or in the alternative, to order Respondents to

give Petitioner a bond redetermination hearing;

(7) Award Petitioner reasonable attorneys' fees and costs; and

(8) Grant any further relief the Court deems just and proper.

Dated this 20th Day of November 2025.

/s/ Christopher J. Roth
Christopher J. Roth
Roth Weinstein, LLC
713 S. 16th St.
Omaha, NE 68102
Office: (402) 346-0720
Fax: (402) 615-6223
Roth@RothWeinstein.com