## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE VALDES ALVAREZ,<br><br>          Petitioner,<br><br>vs.<br><br>TODD M. LYONS, Acting Director,<br>United States Immigration and<br>Customs Enforcement, et al.,<br><br>          Defendants. | 8:25-CV-672<br><br>MEMORANDUM AND ORDER<br>CONDITIONALLY GRANTING<br>PETITION FOR WRIT OF<br>HABEAS CORPUS |

The petitioner is a noncitizen currently detained in the Sarpy County Jail pending removal proceedings. He seeks a writ of habeas corpus under 28 U.S.C. § 2241. He contends his detention is unlawful because he has not had the benefit of a bond hearing pursuant to 8 C.F.R. §§ 236.1(d)(1) and 1236.1(d)(1). Filing 1. The government[1] responds that his detention is mandatory, not discretionary, and he is not eligible to be released on bond.

The briefing demonstrates that the petitioner's application for the writ only presents issue of law, so the Court declines to hold a hearing. *See* § 2243. The Court will conditionally grant the petition. The government shall provide the petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and corresponding regulations within seven days of this Order. If the government fails to do so, the petitioner will be immediately released from detention.

---

[1] The defendants in this case include several federal officials, as well as the Sarpy County Sheriff, in his official capacity. Only the federal officials filed a response.

## I. BACKGROUND

The material facts are not in dispute. The petitioner was taken into custody in Omaha by Immigration and Customs Enforcement officers on November 15, 2025, on his way to work. *See* filing 11-5 at 1; filing 11-4 at 1. He is a citizen of Mexico, with a Mexican passport, and he entered the United States in 1997. Filing 1 at 5. He has no criminal history and no immigration record. *See* filing 11-1 at 2. He has resided in Omaha for several years. Filing 1 at 5; *see also* filing 11-3 at 8. He has five children, four of whom are citizens. One of the petitioner's children has applied for the petitioner to become a lawful permanent resident. Filing 1 at 5.

The Department of Homeland Security determined the petitioner is in removal proceedings under 8 U.S.C. § 1225(b)(2)(A), is subject to mandatory detention, and is ineligible for a bond. *See* filing 14 at 2-3. An immigration judge denied the petitioner's request for a custody redetermination under 8 C.F.R. § 1236 for lack of jurisdiction. Filing 11-2 at 1; *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The petitioner now seeks a writ of habeas corpus ordering the government to immediately release him from custody or, in the alternative, provide him with a bond hearing.

## II. STANDARD OF REVIEW

The writ of habeas corpus is available to every individual detained in the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2008); *Boumediene v. Bush*, 553 U.S. 723, 742-43 (2008). Historically, the protections of the writ have been strongest when reviewing the legality of executive detention. *I.N.S. v. St. Cyr,* 533 U.S. 289, 301 (2001). The Great Writ is "a vital instrument" to protect individual liberties, and is an essential check on abuses of government power. *Boumediene*, 553 U.S. at 743.

2

Except during periods of formal suspension, federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty." *Id.* at 745 (quoting *Hamdi*, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." *Id.* at 744 (quoting The Federalist No. 84 (Alexander Hamilton)).[2]

28 U.S.C. § 2241 confers federal jurisdiction to hear statutory and constitutional challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *accord Shah v. Reno*, 184 F.3d 719, 724 (8th Cir. 1999). The petitioner must show he is in custody in violation of the Constitution or laws of the United States. *See* § 2241(c)(3); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025).

## III. DISCUSSION

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that unless the alien has committed a specifically listed crime, the Attorney General may detain the

---

[2] "[C]onfinement of the person, by secretly hurrying him to jail, where his sufferings are unknown or forgotten, is a less public, a less striking, and therefore a *more dangerous engine* of arbitrary government." The Federalist No. 84 (quoting 1 William Blackstone, Commentaries *136) (emphasis in original).

The writ of habeas corpus, along with the Fifth and Fourteenth Amendments, prevents tyrannical governments from making "scape goats [sic] of the weak, or of helpless political, religious, or racial minorities and those who differed, who would not conform and who resisted tyranny." *See Chambers v. Florida*, 309 U.S. 227, 236 (1940). The right of habeas corpus, among others, is an "assurance against ancient evils," preserving the "blessings of liberty." *Id.* at 237 n.10.

3

alien *or* release the alien on bond or conditional parole. Section 1225(b)(2), on the other hand, provides that detention is mandatory for "an alien who is an applicant for admission."

The petitioner argues his detention without the opportunity for a bond hearing is unlawful because he has no criminal history and was apprehended within the United States; thus, he is due the process outlined in § 1226(a). Noncitizens detained under § 1226(a) must receive bond hearings at the outset of detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). The government, however, asserts that the petitioner is actually in custody under § 1225(b)(2), which mandates detention. The only issue in this case is which statute applies to the petitioner—§ 1226(a) or § 1225(b)(2).

### Statutory Framework and Enforcement

Section 1226 "sets out the default rule" for detaining noncitizens "already present in the United States." *Jennings,* 583 U.S. at 303. It permits the Attorney General, in her discretion, to detain a noncitizen pending his removal from the United States. § 1226(a). Generally, a noncitizen detained pending a removal proceeding is entitled to a bond hearing, unless he committed one of the listed crimes in § 1226(c). *See Jennings*, 583 U.S. at 306.

On the other hand, § 1225 involves inspections by immigration officers, expedited removal of inadmissible arriving aliens, and which "applicants for admission" are eligible for a hearing. Generally, § 1225 describes the process that "begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* at 287. While not limited to designated ports of arrival, *see* § 1225(a)(1), the statute generally describes the inspection process that occurs when a noncitizen enters the United States. § 1225; *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (hereinafter "*Rodriguez I*").

4

Longstanding agency practice has treated noncitizens who entered without inspection and were apprehended while residing in the United States as subject to § 1226(a). *See id.* at 1260; Detention and Removal of Aliens, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). But beginning in 2022, some immigration judges in Tacoma, Washington, began denying bond hearings to that group, instead treating them as subject to mandatory detention under § 1225(b)(2)(A). *See Rodriguez I*, 779 F. Supp. 3d at 1244. This departure from the norm was widely adopted by the current administration this summer. *See* Memorandum from Rodney S. Scott, Comm'r of U.S. Customs & Border Prot., Detention of Applicants for Admission (July 10, 2025) (https://www.cbp.gov/document/foia-record/detention-applicants-admission) [https://perma.cc/56W9-TNPW] ("revising" the agency's legal position from its "historical" treatment of certain noncitizens).

In September, the Board of Immigration Appeals issued a precedential opinion approving this "new" understanding of § 1225. *See Yajure Hurtado*, 29 I. & N. Dec. 216. The BIA held that the "plain text" of § 1225 applies to any noncitizen "present in the United States" who has not been inspected. *See id.* This interpretation has been challenged in hundreds of lawsuits across the country.[3]

The issue in this case is whether the petitioner is subject to § 1225(b)(2)(A)'s mandatory detention provision, or whether he falls under the default provision in § 1226(a), entitling him to a bond hearing.

---

[3] As both parties recognizes, the BIA opinion is not binding on this Court. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). Nor is it persuasive.

5

*Plain Text*

As in all cases involving questions of statutory interpretation, the Court begins by giving the words in the statute their ordinary and common meaning, unless otherwise defined. *E.g., United States v. Smith*, 756 F.3d 1070, 1073 (8th Cir. 2014). The Court considers whether the meaning is unambiguous when "read in its proper context," *id.*, including both the specific context in which the language is used, and the broader context of the statute as a whole. *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 807 (8th Cir. 2021).

Under § 1225(a)(1),

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

And under § 1225(b)(2)(A),

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding].

"Admission" is defined in a different part of the statutory scheme. "Admission" means, "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A).

6

The government argues that people apprehended while residing in the United States are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A). Relying on *Jennings*, the government contends that if a person is "present" in the United States, but has not been admitted, he is treated as an applicant for admission under § 1225. *See* filing 14 at 3.

But the plain text of § 1225(b)(2)(A) only applies to noncitizens "seeking admission." And more specifically, based on the definition in § 1101, § 1225 applies to noncitizens seeking *lawful* admission. Noncitizens who entered the country unlawfully are not seeking lawful admission. *See Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, at *5 (S.D.N.Y. Nov. 26, 2025).

The government asserts that the statute does not impose any requirement that a person be "actively" seeking admission. Filing 14 at 11. But if that's the case, the phrase "seeking admission" need not appear in the statute at all. *See Rodriguez v. Bostock*, No. 3:25-CV-05240, 2025 WL 2782499, at *21 (W.D. Wash. Sept. 30, 2025) (hereinafter "*Rodriguez II*"); *Bartenwerfer v. Buckley*, 598 U.S. 69, 78 (2023) (when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, we generally take the choice to be deliberate." (cleaned up)). By including the phrase "seeking admission," Congress did more than "simply describ[e] that same alien with a synonym to 'applying.'" *See* filing 14 at 11. Instead, Congress narrowed the scope of § 1225(b)(2)(A).

The plain text of the statutory provision at issue limits mandatory detention to those noncitizens who are seeking lawful admission into the United States and come into contact with an immigration officer for inspection. It does not apply to noncitizens who are inadmissible, but have nevertheless entered the country and later encounter the government.

7

*Other Canons*

The plain text of the statute alone belies the government's interpretation of § 1225(b)(2)(A). The Court need not go on. But in the interest of completeness, other canons of statutory interpretation only strengthen the petitioner's reading of the statute.

The title of a statute can be used to help interpret the meaning of indeterminate key terms. *See Dubin v. United States*, 599 U.S. 110, 121 (2023). A statute's meaning does not always turn on the broadest imaginable definitions of its component words. *Id.* at 120. A title is "especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Id.* at 121 (quoting *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment)) (cleaned up).

Even if the term "seeking admission" was indeterminate (which it is not), the title of § 1225 reinforces a narrow interpretation. The title is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." *See* Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 302(a), 110 Stat. 3009-579 (1997) (providing a title for § 1225). So, § 1225 applies to "arriving aliens," *not* those who have already arrived, and provides for their expedited removal. The statute carves out protections for noncitizens seeking asylum, but otherwise only governs the process for individuals who enter the country and are deemed inadmissible at that time.

Comparing the titles of §§ 1225 and 1226 further reinforces this understanding. The title of § 1226 is "Apprehension and detention of aliens." While § 1225's title targets "arriving aliens," § 1226 is much broader. Thus, § 1226 is the default rule, applicable to any noncitizens subject to removal proceedings, unless they can be further categorized.

8

Additionally, if § 1225 were as broad as the government asserts, parts of § 1226 would be rendered superfluous. *See, e.g., Rodriguez* II, 2025 WL 2782499, at *18. In particular, the recently added § 1226(c)(1)(E)—which extends the list of crimes mandating detention—would be wholly redundant, because *any* inadmissible noncitizen, regardless of their criminal history, would be subject to mandatory detention under the government's expansive reading of § 1225(b)(2)(A). That addition to § 1226 was promulgated *earlier this year*, demonstrating the widespread understanding by Congress and the executive branch that § 1226, not § 1225(b)(2)(A), applies to noncitizens apprehended while residing in the United States. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)). As the Supreme Court noted, several decades ago:

> [O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the later instance the Court has recognized additional rights and privileges not extended to those who are merely on the threshold of initial entry. The distinction was carefully preserved in Title II of the Immigration and Nationality Act.

*Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (internal quotations and citations omitted). Congress cannot have intended to displace that fundamental distinction, which is reflected in the plain text § 1225(b)(2)(A), requiring an alien be "seeking admission."

Even allowing for some redundancy in statutory drafting, *see Barton v. Barr*, 590 U.S. 222, 223 (2020), it is a "cardinal rule of statutory interpretation

9

that no provision should be construed to be *entirely* redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988) (collecting cases) (emphasis supplied). The government's interpretation of the statute cannot withstand this canon.

The purpose of § 1225 is clear from its title and its text—it mandates detention of noncitizens who are inspected while "seeking admission" to the country, with some exceptions. *See Jennings*, 583 U.S. at 287; *accord* § 1225a ("Preinspection at foreign airports"). All other noncitizens deemed inadmissible and apprehended by the government are detained subject to § 1226(a), the "default rule," unless § 1226(c) (or some other provision) applies. *See Jennings*, 583 U.S. at 288.

### Law Applicable to Petitioner

The petitioner was not apprehended while he was "seeking admission" to the country; he was detained while he was driving to work. Filing 11-5 at 1; filing 11-4 at 1. Therefore, the default provision in § 1226(a) applies. The government argues that, even if he wasn't seeking admission when he was detained, he's seeking admission *now*, because "he seeks release from immigration court, as opposed to removal to Mexico." Filing 14 at 12.

The Court is unpersuaded. The petitioner did not "seek admission" to the United States for purposes of § 1225 by filing a petition for writ of habeas corpus. Rather, the petitioner seeks *justic*e: He is challenging the government's arbitrary confinement. *See Boumediene*, 553 U.S. at 744. Challenging an unlawful act cannot somehow make that act lawful. Nor can petitioner's pending application to become a permanent resident subject him to § 1225(b)(2)(A); he is not an arriving alien, "on the threshold of initial entry." *See Leng May Ma*, 357 U.S. at 187.

The government misrepresents the Supreme Court's holding in *Jennings*. The Court didn't "explain[] both aliens arrested at the border and

10

those illegally residing within the United States would fall under § 1225," as asserted. Filing 14 at 6. Rather, as described above, the Supreme Court called § 1226(a) the "default rule" that "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 288, 303. It explained:

> U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id.* at 289 (emphasis supplied); *accord Leng May Ma*, 357 U.S. at 187; *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). Based on the facts presented, which the government does not dispute, the petitioner is subject to the default rule, because he was already in the country and was not "seeking admission."

The *overwhelming* majority of courts to consider this issue have persuasively reasoned that noncitizens who have been taken into custody while residing within the United States, who are not subject to mandatory detention under § 1226(c), are eligible for bond and bond redetermination under § 1226(a). *E.g., Barco Mercado,* 2025 WL 3295903, at *4 (citing 350 cases in the majority and 12 cases in the minority); *see also Sales Ambrocio v. Noem*, No. 4:25-cv-3226, 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025); *Barrajas v. Noem*, No. 4:25-cv-322, 2025 WL 2717650, at *4 (S.D. Iowa Sept. 23, 2025); *Maldonado*, 795 F. Supp. 3d at 1155. This Court joins the majority.

The appropriate remedy is to issue a conditional writ and direct the immigration court to provide a bond hearing. The Court need not reach the

constitutional issues presented based on the determination that § 1226(a) applies to the petitioner. The petitioner's motion for a preliminary injunction (filing 13) is moot, and therefore denied.

IT IS ORDERED:

1.      The petitioner's Petition for Writ of Habeas Corpus (filing 1) is conditionally granted as set forth in this Order.

2.      The petitioner's Motion for Preliminary Injunction (filing 13) is denied as moot.

3.      The government shall provide the petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations **on or before December 19, 2025**.

4.      If the government does not provide the petitioner with a bond hearing as required, the petitioner must be immediately released from detention.

5.      **On or before December 22, 2025**, the government shall provide the Court with a status update regarding the bond hearing or, if no bond hearing was held, advise the Court regarding the petitioner's release.

12

6.    Counsel for the federal respondents shall inform respondent
Greg London as to the decision of the Court upon the filing
of the Court's Order.

7.    A separate judgment will be entered.

Dated this 12th day of December, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge